**STALLARD v. UNITED STATES.**

**PRICE v. UNITED STATES.**

Nos. 2365, 2470.

United States District Court
W. D. Kentucky, at Louisville.

July 16, 1953.

Armer H. Mahan, Louisville, Ky., for plaintiffs.

Charles F. Wood, Acting U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

May 1, 1952, the plaintiff Joyce Stallard filed civil action number 2365 against the United States, seeking to recover $25,000.

On September 26, 1952, Mrs. Pauline Price filed civil action number 2470, seeking to recover $809.32, damages to a Buick automobile owned by her.

Mrs. Stallard was injured and Mrs. Price's automobile was damaged in a collision between the Buick automobile and a Chevrolet station wagon owned by the United States and driven by a soldier by the name of Demsky, at the intersection of Sixth and Oak Streets in Louisville, Kentucky, October 7, 1951, at approximately 10 o'clock p. m.

Mrs. Stallard was accompanied by her husband, was driving Mrs. Price's Buick automobile and the Stallards were on the way to the hospital where Mrs. Stallard expected to become a patient while giving birth to a child.

Both cases were filed under the jurisdictional grant of the Federal Tort Claims Act, Title 28 U.S.C.A. § 1346. The case was tried to the Court without a jury.

The Court makes the following

Findings of Fact.

1. October 7, 1951, at or about 10 o'clock p. m., the Buick automobile owned by Mrs. Price and driven by Ray Stallard, in which the latter's wife, Mrs. Joyce Stallard was a passenger, was being operated eastwardly on Oak Street, in Louisville, Kentucky.

2. At said time, a Chevrolet station wagon, owned by the United States and driven by a member of the Armed Forces—one Demsky—was being driven southwardly on Sixth Street.

3. That at the time the Buick automobile driven by Stallard reached the intersection of Sixth & Oak Streets, the overhead traffic signal controlling traffic at the intersection was green for traffic on Oak Street.

4. That at said time the overhead traffic signal controlling traffic at and through said intersection was red for traffic on Sixth Street.

5. The driver of the Chevrolet station wagon, owned by the Government, was not on an authorized emergency trip when it reached the intersection of Sixth & Oak Streets, but was engaged in an effort to get some photographs, which had been taken near Fort Knox, to the Courier Journal and Louisville Times Publishing Company at Sixth and Broadway, Louisville.

6. The Chevrolet station wagon was being operated by Demsky a member of the Armed Forces and on a mission on which he had been duly sent by his superior officers.

7. On approaching the traffic light at the intersection of Sixth & Oak Streets and in disregard of the red signal requiring him to stop, Demsky, drove the station

954

wagon through the intersection and came in collision with the Buick automobile in which Mr. & Mrs. Stallard were riding.

The operation of the station wagon through said intersection in disregard of the red traffic signal was negligence on the part of the said Demsky.

8. As a direct and proximate result of the negligent operation of the station wagon by Demsky, the collision between the two vehicles occurred and resulted in damage to the Buick automobile owned by Mrs. Price and injuries to Joyce Stallard.

9. The Buick automobile owned by Mrs. Price was damaged to the extent of $809.32.

10. Mrs. Joyce Stallard was seated on the right side of the front seat and was thrown by the impact of the cars against the cowl instrument board and front of the Buick car and sustained a blow on her head and cut or contusions on the knee and was otherwise bruised, but was able to continue to the hospital, where she promptly received a thorough examination and assistance by her Doctor. She returned to her home on October 9th and on the following day—October 10th—she returned to the hospital, where she gave a normal birth to a normal child.

About one month after this experience, she began to have dizzy spells and to suffer a form of epileptic seizures.

## Conclusions of Law.

I. This Court has jurisdiction of the parties to these proceedings and to the subject matter involved in each. Title 28, Section 1346.

II. The Chevrolet station wagon owned by the United States and operated on the occasion in question by Demsky, was not on an authorized emergency commission as provided by General Ordinances of the City of Louisville Traffic Code, Section 18–1 and 18–11A.

III. Counsel for the Government, in their brief, concede that the plaintiff Pauline Price is entitled to recover judgment for $809.32, which amount was stipulated as correctly reflecting the damage to the Buick automobile. Nor does Counsel contend that Mrs. Stallard is not entitled to recover some amount for her injuries and suggest the sum of $250, as being adequate to compensate her for her injuries, but seriously contend that there is no connection between the epilepsy or petit mal, from which Mrs. Stallard claims to be suffering and the accident of October 7, 1951.

Doctor Delbert Hoffman was introduced. He attended Mrs. Stallard during the period of pregnancy and at the birth of her child. Dr. Hoffman was of opinion that she suffered no permanent injury as a result of the accident.

Doctor George Allen was introduced by plaintiff, but he did not testify that any spells which the plaintiff had had were in any way attributable to the accident. The substance of his testimony was that the plaintiff was unhappily married and had evidenced some tendencies toward suicide.

Plaintiff's chief witness was Doctor H. Lester Reed, a neuro-surgeon, who saw the plaintiff June 30, 1952 and October 1952 and for the last time in January 1953. Dr. Reed caused an electro-encephalogram to be taken and described the tracing as mildly abnormal. Doctor Reed's conclusion was that "Both at that time (when he first examined plaintiff) and at subsequent visits was that by history the lady was having a type of seizure which she told me she had not had before. In fact she said she had never had seizures before. I was not impressed by the severity of the head injury * * * On the other hand it is certainly feasible and reasonable that a small injury producing transitory unconsciousness can be followed by convulsions of various sorts and these descriptions are those of convulsions. I never saw one. I have been informed that one of the other doctors did. If he did, it would be very valuable for us to know. I assume that she had them as she described them and that the medications which we used from time to time altered them and helped to some degree. Whether or not they came as a result of injury I don't know. In the absence of them before and the lady's statements, I would have to say that they were most probably the result of trauma. It is a problem that one cannot

say or I cannot say definitely except by inference. * * *"

Mrs. Stallard was examined by Doctor Buskirk, who first saw the plaintiff on February 4, 1952. He diagnosed her trouble as petit mal. It was his opinion that seventy-five percent of such cases were idiopathic and twenty-five percent are perhaps due to trauma.

On the first visit of plaintiff to Dr. Buskirk's office, he observed her staring into space; observed an increase in her respiration and noticed a tendency to go to the left when walking. Dr. Buskirk would express no opinion that there was a connection between the accident of October 7, 1951 and the petit mal.

The Government introduced Doctor Everett Grantham, outstanding neurological surgeon and Doctor Oscar Block. Both examined Mrs. Stallard and found no symptoms of petit mal or other evidence of injury.

Conclusion.

The Court concludes that $500 is ample compensation to Mrs. Stallard for the injuries sustained by her in the accident and that Mrs. Price is entitled to a judgment of $809.32 for damages to her automobile.

Counsel may submit judgments for these amounts.